UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BNCCORP, Inc. and BNC National Bank,        Civil No. 15-3624 (DWF/TNL)

      Plaintiffs,

v.                                                                          **MEMORANDUM
                                                                             OPINION AND ORDER**

BNC Bancorp and Bank of North Carolina,

      Defendants.

_____

Michael M. Lafeber, Esq., Scott M. Flaherty, Esq., and Michael M. Sawers, Esq., Briggs and Morgan, P.A., counsel for Plaintiffs.

Felicia J. Boyd, Esq., Barnes & Thornburg LLP; William M. Ragland, Jr., Esq. and Preston H. Heard, Esq., Womble Carlyle Sandridge & Rice, LLP, counsel for Defendants.

_____

## INTRODUCTION

      This is a trademark infringement action brought by Plaintiffs BNCCORP, Inc. and BNC National Bank (together, "Plaintiffs") against Defendants BNC Bancorp and Bank of North Carolina (together, "Defendants"). This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer. (Doc. No. 16.) For the reasons set forth below, the Court grants Defendants' motion and, finding that it lacks personal jurisdiction over Defendants, dismisses Plaintiffs' claims without prejudice.

## BACKGROUND

Both Plaintiffs and Defendants are providers of financial goods and services, and both utilize marks incorporating "BNC."  (*See, e.g.,* Doc. No. 20 ("Heard Decl.") ¶ 3, Ex. A; Doc. No. 27 ("Sawyers Decl.") ¶ 2, Ex. A.)  Plaintiff BNCCORP, Inc. is a Delaware corporation with its principal place of business in Bismarck, North Dakota.  (Doc. No. 1 ("Compl.") ¶ 1.)  Plaintiff BNC National Bank is a federally-chartered national banking association with its principal place of business in Glendale, Arizona.  (*Id.* ¶ 2.)  Four of Plaintiffs' corporate officers are located in Minnesota—the Chief Executive Officer, the Chief Financial Officer, the Chief Investment Officer, and the Chief Legal Officer.  (Doc. No. 26 ("Collins Decl.") ¶ 2.)  Plaintiffs also have offices and a bank branch in Minnesota.  (*Id.* ¶ 3.)

Defendant BNC Bancorp is a bank holding company for Defendant Bank of North Carolina, a commercial bank incorporated and chartered under North Carolina law.  (Doc. No. 19 ("Callicutt Decl.") ¶ 3.)  BNC Bancorp's headquarters are in High Point, North Carolina, and Bank of North Carolina's headquarters are in Thomasville, North Carolina.  (*Id.* ¶ 5.)  Defendants operate 67 bank branches and offices in North Carolina, South Carolina, and Virginia.  (*Id.* ¶ 3.)  While Defendants have customers with addresses in 47 states, the District of Columbia, and the Virgin Islands, the majority of their customers are located in the Mid-Atlantic and Southeast regions.  (*Id.* ¶ 4.)  Defendants are not registered to do business in Minnesota, have no established places of business in Minnesota, and have no employees or agents in Minnesota.  (*Id.* ¶¶ 8–10.)

From 1998 through June 2015, Defendants serviced 120 bank accounts controlled by customers with Minnesota mailing addresses.  (Sawyers Decl. ¶ 7, Ex. F.)  As of September 15, 2015, customers with Minnesota mailing addresses controlled 23 of approximately 129,350 accounts serviced by Defendants.  (Callicutt Decl. ¶ 15.)  Three of the 23 Minnesota accounts involved certificates of deposit acquired by Minnesota banks through wholesale brokers, 7 were held by customers with loans on real property located in North Carolina or South Carolina, and 10 were acquired through Defendants' acquisition of banks located in North Carolina, South Carolina, and Virginia.  (*Id.*)  The 23 accounts were controlled by 16 unique customers.  (*Id.*)

Defendants do not target current or prospective customers in Minnesota.  (*Id.* ¶¶ 11–12.)  Defendants mail business communications bearing "BNC" marks to their accountholders, including accountholders with Minnesota mailing addresses, but they do not send unique mailings to Minnesota.  (*See* Sawyers Decl. ¶ 8, Ex. G; Callicutt Decl. ¶ 11.)  Defendants also operate websites featuring the "BNC" marks, but the websites are not uniquely available to Minnesota users.  (*See* Sawyers Decl. ¶¶ 4–6, 11, Exs. C, D, E, J; Callicutt Decl. ¶ 11.)  Significantly, Minnesota residents cannot open accounts with Defendants through Defendants' websites, by phone, or by mail.  (*Id.* ¶ 14.)

On January 6, 2015, Plaintiffs sent a letter to Defendants regarding the "BNC" marks.  (*Id.* ¶ 15, Ex. N.)  The letter was on BNCCORP, Inc. letterhead displaying an address in North Dakota, and it stated that BNCCORP, Inc.'s headquarters were located in North Dakota.  (*Id.*)  The letter advised Defendants of Plaintiffs' concerns regarding Defendants' use of marks incorporating "BNC," stressing Plaintiffs' substantial

3

investment in the "BNC" marks over a period of decades. (*Id.*)  In addition, the letter noted that Defendants' use of "BNC" could lead to marketplace confusion. (*Id.*)  After receiving the letter, Defendants continued to use the "BNC" marks. (*See id.* ¶¶ 4–6, 11, Exs. C, D, E, J.)

On September 9, 2015, Plaintiffs filed this lawsuit in the District of Minnesota. (Compl.)  Plaintiffs allege that they have trademark rights in the "BNC" marks and that Defendants have encroached on those rights by using the marks without Plaintiffs' permission. (Compl. ¶¶ 10–22.)  Plaintiffs further allege that Defendants have used the "BNC" marks to promote banking services and that Defendants' use of the marks is likely to cause confusion among consumers. (*Id.* ¶¶ 16, 19.)  One example of such confusion, according to Plaintiffs, occurred after Defendants acquired Valley Bank, a bank that operated branches in Virginia. (*Id.* ¶ 20.)  Plaintiffs allege that multiple Valley Bank customers mistakenly tried to enroll in Plaintiffs' online banking program, instead of Defendants' program, and called Plaintiffs to seek assistance. (*Id.*)

Defendants now move this Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction, or alternatively, to transfer this lawsuit to the Middle District of North Carolina. (Doc. No. 16.)

## DISCUSSION

**I.    Motion to Dismiss for Lack of Personal Jurisdiction**

**A.    Principles of Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that the court may exercise personal jurisdiction over the

defendant. *E.g., Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011). The court, which may consider matters outside the pleadings, must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Id.*

To establish personal jurisdiction over a nonresident defendant, the facts must satisfy the requirements of the forum state's long-arm statute, and exercise of personal jurisdiction over the defendant must comply with constitutional due process. *E.g., Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). "Minnesota's long-arm statute is coextensive with constitutional limits." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). As such, a court need only decide whether jurisdiction over a defendant satisfies the Due Process Clause. *Id.*

"Due process requires 'minimum contacts' between a nonresident defendant and the forum state, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Steinbuch v. Cutler*, 518 F.3d 580, 585–86 (8th Cir. 2008) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The defendant's contacts with the forum state must not be "random, fortuitous, or attenuated" but instead must arise because the defendant has "purposefully avail[ed]" itself of the privilege of conducting activities in the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation marks omitted). Further, personal jurisdiction may be either general or specific. When a defendant's activities in the forum state are "continuous and systematic," a court may assert general jurisdiction over the defendant and hear all claims against the defendant. *Johnson v. Arden*, 614 F.3d 785, 794

5

(8th Cir. 2010). On the other hand, when a defendant has purposely directed its activities at the forum state, a court may assert specific jurisdiction over the defendant and hear claims that arise out of or relate to those activities. *Id.*

In conjunction with these principles, the Eighth Circuit routinely considers five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relationship of the plaintiff's claims to the contacts; (4) the interests of the forum state; and (5) the convenience to the parties. *E.g., id.* The first three factors are the primary factors, and they relate to the "minimum contacts" analysis. *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1017–18 (D. Minn. 2008). The third factor distinguishes between general and specific jurisdiction. *Id.* The fourth and fifth factors are secondary and relate to the reasonableness of exercising personal jurisdiction over the defendant. *Id.*

### B. Specific Jurisdiction Over Defendants

Plaintiffs argue that Defendants are subject to specific personal jurisdiction in the District of Minnesota.[1] As such, the Court must decide whether Defendants maintained "minimum contacts" with Minnesota, including whether Defendants purposely directed their activities at Minnesota and whether Plaintiffs' claims arise out of or relate to the activities directed at Minnesota. *See Arden*, 614 F.3d at 794.

Plaintiffs contend that Defendants purposely directed their activities at Minnesota by actively servicing accounts with Minnesota mailing addresses. (Doc. No. 25 at

---

[1] Plaintiffs do not argue that Defendants are subject to general personal jurisdiction.

6

16-17.) According to Plaintiffs, Minnesota accountholders received marketing materials and business communications bearing the allegedly infringing "BNC" marks, and they used Defendants' websites, which feature the "BNC" marks. (*Id.* at 22.) As such, Plaintiffs contend that this trademark infringement suit arises out of or relates to activities that Defendants purposely directed at Minnesota. (*Id.*)

Considering the nature, quality, and quantity of Defendants' contacts, as well as the relationship between Defendants' contacts and Plaintiffs' claims, the Court disagrees with Plaintiffs. *See Arden*, 614 F.3d at 794. To begin, Defendants' contacts with Minnesota are too random, fortuitous, attenuated, and infrequent to support jurisdiction. *See Burger King*, 471 U.S. at 475. Accounts with Minnesota mailing addresses make up only a small fraction of Defendants' accounts. Further, the 23 Minnesota bank accounts serviced by Defendants as of September 15, 2015, involved certificates of deposit acquired by Minnesota banks through wholesale brokers, loans on real property located outside of Minnesota, and accounts acquired by Defendants through Defendants' acquisition of other non-Minnesota banks. Defendants did not solicit Minnesota residents as customers. Indeed, Minnesota residents cannot open accounts remotely but, presumably, must establish customer relationships in person at one of Defendants' places of business in North Carolina, South Carolina, and Virginia.

Moreover, Plaintiffs' claims—based on the "BNC" marks—do not relate specifically to Defendants' Minnesota bank accounts. Defendants service accounts with mailing addresses in 47 states, the District of Columbia, and the Virgin Islands. Defendants' business communications are sent to all customers, not just those with

7

Minnesota addresses, and Defendants' websites are, presumably, available to customers and prospective customers in any state, not just Minnesota.  The Court concludes that Defendants' Minnesota accounts, mailings, and websites are insufficient to establish "minimum contacts" with Minnesota.  The Court lacks personal jurisdiction over Defendants.[2]

### C. The "Effects" Test

Plaintiffs also argue that Defendants are subject to specific personal jurisdiction under the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984).  The "effects" test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir. 1991) (quotation marks omitted).  To establish personal jurisdiction under the "effects" test, Plaintiffs must make a prima facie showing that Defendants' alleged acts of infringement: (1) were intentional; (2) were uniquely or expressly aimed at Minnesota; and (3) caused harm, the brunt of which was suffered—and which Defendants knew was likely to be suffered—in Minnesota.  *See Arden*, 614 F.3d at 796.

Plaintiffs cannot establish either the second or third element of the "effects" test.  At the outset, the evidence does not support a finding that Defendants "uniquely or expressly" targeted Minnesota.  Defendants did not solicit Minnesota residents as

---

[2] Upon consideration of the three primary Eighth Circuit factors, the Court finds that Defendants lack "minimum contacts" with Minnesota.  As such, the Court need not consider the two secondary Eighth Circuit factors.  *See Pope*, 588 F. Supp. 2d at 1015.

potential customers. Defendants sent materials with the allegedly infringing marks to all customers, not just Minnesota residents. And, no evidence suggests that only Minnesota residents could access Defendants' websites.

Further, the evidence does not support a finding that the brunt of the alleged harm caused by Defendants' allegedly infringing conduct was felt in Minnesota, or that Defendants knew that the brunt of the harm would be felt there. First, there is little evidence suggesting that significant harm occurred in Minnesota. Defendants' marketing efforts did not target Minnesota, and the majority of Defendants' customers—the most likely recipients of Defendants' materials and users of Defendants' websites—are located in the Mid-Atlantic and Southeast regions. While four of Plaintiffs' corporate officers are located in Minnesota, Plaintiffs' principal places of business are in North Dakota and Arizona.

Second, even if the Court accepted Plaintiffs' argument that the brunt of the alleged harm was felt in Minnesota, Plaintiffs provide minimal evidence that Defendants knew that the harm would be felt there. Indeed, the January 6, 2015 letter regarding the "BNC" marks was written on letterhead bearing a North Dakota address and indicated that BNCCORP, Inc. was headquartered in North Dakota. In these circumstances, Plaintiffs fail to make a prima facie showing that the Court has personal jurisdiction over Defendants under the "effects" test.

## II.    Alternative Motion to Transfer

When, as here, a court lacks personal jurisdiction over a defendant, the court may dismiss the action or transfer it to a judicial district where the defendant is subject to

personal jurisdiction. 28 U.S.C. § 1631; *Woodcock*, 444 F.3d at 954 n.2. In this case, Defendants request transfer of the action only if the Court finds that it has personal jurisdiction over them—the Court has not so found. (*See* Doc. No. 18 at 19.) Plaintiffs do not request transfer of this action. Because neither party requests transfer, the Court will dismiss the action, without prejudice, rather than transferring it.[3]

### III.    Request for Jurisdictional Discovery

Plaintiffs request limited jurisdictional discovery "so that [they] may provide additional evidence to this Court." (Doc. No. 25 at 34.) "The decision to grant jurisdictional discovery is within the sound discretion of the District Court." *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 959 (D. Minn. 2000). Jurisdictional discovery is unnecessary when there are no specific facts, essential to resolving the jurisdictional inquiry, that are either unknown or in dispute. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011). Likewise, a court may deny a request for jurisdictional discovery that is supported only by speculative or conclusory assertions about contacts with the forum state. *Id.*

Here, Plaintiffs point to no unknown or disputed facts that they need to support their arguments regarding personal jurisdiction. Instead, the key facts appear to be known and undisputed by Plaintiffs: Defendants serviced a number of bank accounts with Minnesota mailing addresses, mailed communications bearing the "BNC" marks to

---

[3]     Given the factual record in this case, if the Court had reached the issue of transfer, it likely would have transferred this action to the Middle District of North Carolina.

their customers, and operated websites featuring the "BNC" marks; they did not specifically or uniquely target Minnesota. These facts do not support this Court's exercise of personal jurisdiction, and Plaintiffs offer no information about the "additional evidence" they hope to provide to the Court. Accordingly, jurisdictional discovery is unwarranted, and the Court denies Plaintiffs' request.

## CONCLUSION

Because Defendants do not have sufficient "minimum contacts" with Minnesota, the Court lacks personal jurisdiction over Defendants. The Court dismisses Plaintiffs' claims without prejudice.[4]

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer (Doc. No. [16]) is **GRANTED** to the extent it requests dismissal of Plaintiffs' claims, without prejudice, for lack of personal jurisdiction.

2. Plaintiffs' Complaint (Doc. No. [1]) is **DISMISSED WITHOUT PREJUDICE**.

---

[4] The Court acknowledges that Defendants claim that Plaintiffs improperly used business information, provided by Defendants subject to Federal Rule of Evidence 408 and a confidentiality agreement, to support Plaintiffs' argument that the Court has personal jurisdiction over Defendants. (Doc. No. 18 at 4–6, 23–24; Doc. No. 31 at 18-20.) Because the Court finds that it lacks jurisdiction, it will not reach this issue.

11

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 21, 2015					s/Donovan W. Frank
								DONOVAN W. FRANK
								United States District Judge